# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Court File: 18–CV–() 18- CV-3255 DWF/LIB

Austin Black Elk, Michael Dewayne Perseke,
Michael Whipple, Shannon D. Hollie,
Mark Dunker, Gary Spicer, Rodney Thundercloud,
Thomas Milton, Justin Jacobson,  August Kingbird,
Nick Olson; Guy I. Green; Jamie Allen Andrews;
Terrance L. Holliday;
and all others similarly situated,
    Plaintiffs,

V.

Thomas Roy; Emily Johnson Piper; Nancy
Johnston; Lori Swanson; Minnesota Attorney General,
Minnesota Sentencing Commission; and/or Jane and John Does, in
their official and Individually capacities,

   Defendants.

SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES.

**COMPLAINT FOR VIOLATION OF
CIVIL RIGHTS UNDER 42 U.S.C.
§1983**

**RECEIVED**
BY MAIL

NOV 26 2018

CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

## INTRODUCTION

1. This is a Civil Rights Action filed by Plaintiffs who are involuntarily committed to the care and custody of the State of Minnesota Sex Offender Program (MSOP), administered by the Department of Human Services ("DHS") for an indeterminate term.

2. This is a civil rights action brought by a Plaintiffs who are under dual commitments to Minnesota Department of Corrections ("DOC") and Department of Human Services (" DHS"), against Defendants, in their individual and official capacity, for violations of Plaintiffs' constitutional, statutory and common law rights. Specifically, Plaintiffs state that the administratively imposed terms of conditional release under Minn. Stat. § 609.3455 subd 6, 7 and 8, as applied to them is unconstitutional, because the state procedures used is not reasonably related or narrowly tailored to the purpose of legislative intent. Plaintiffs allege violations of their

SCANNED
CxfK
NOV 26 2018
U.S. DISTRICT COURT ST. PAUL

constitutional rights against: (1) double jeopardy; (2) due process; (3) illegal search and seizure; (4) Equal Protection; and (5) substantive due process, procedural due process and due process.

## DEFINITIONS

3.    For the purposes of this complaint, the following words and terms have the meanings defined or given, unless expressly stated differently for that instance within this complaint (Minn. Stat. 609.3455, Minn. Stat. 243.166, subd. 1(b)):

**Conditional Release:**    is a term of probation which is imposed upon the sex offender after he or she has completed his or her sentence.

**Release:**    is defined as to set free from confinement or bondage. When an inmate is on supervised release, he or she is set free from confinement or bondage.

**Probation:**    means when an offender is released from confinement to the community

**Registration of Predatory Offenders:**[1]  Sex Offenders-Subd.  1(a)(b)(ii)(iii)(iv),  (3), (b)(1-3)(c); Subd. 2;

A person shall register under this section if:

(ii) kidnapping under section 609.25;

(iii) criminal sexual conduct under section 609.342; 609.343; 609.344; 609.345; 609.3451, subdivision 3; or 609.3453; or

(iv) indecent exposure under section 617.23, subdivision 3;

(3) the person was sentenced as a patterned sex offender under section 609.3455, subdivision 3a;

---

[1]  Hereinafter referred to as RPO. Sex Offender Registration Notification Act is hereinafter referred to as SORNA

(b) A person also shall register under this section if:

(2) the person enters this state to reside, work, or attend school, or enters this state and remains for 14 days or longer; and

(3) ten years have not elapsed since the person was released from confinement or, if the person was not confined, since the person was convicted of or adjudicated delinquent for the offense that triggers registration, unless the person is subject to a longer registration period under the laws of another state in which the person has been convicted or adjudicated, or is subject to lifetime registration. If a person described in this paragraph is subject to a longer registration period in another state or is subject to lifetime registration, the person shall register for that time period regardless of when the person was released from confinement, convicted, or adjudicated delinquent.

(c) A person also shall register under this section if the person was committed pursuant to a court commitment order under Minnesota Statutes 2012, section 253B.185, chapter 253D, Minnesota Statutes 1992, section 526.10, or a similar law of another state or the United States, regardless of whether the person was convicted of any offense.

**Subd. 2. Notice.** — When a person who is required to register under subdivision 1b, paragraph (a), is sentenced or becomes subject to a juvenile disposition order, the court shall tell the person of the duty to register under section and that, if the person fails to comply with the registration requirements, information about the offender may be made available to the public.

3

electronic, computerized, or other accessible means. The court may not modify the person's duty to register in the pronounced sentence or disposition order. The court shall require the person to read and sign a form stating that the duty of the person to register under this section has been explained. The court shall forward the signed sex offender registration form, the complaint, and sentencing documents to the bureau. If a person required to register under subdivision 1b, paragraph (a), was not notified by the court of the registration requirement at the time of sentencing or disposition, the assigned corrections agent shall notify the person of the requirements of this section. When a person who is required to register under subdivision 1b, paragraph (c) or (d), is released from commitment, the treatment facility shall notify the person of the requirements of this section. The treatment facility shall also obtain the registration information required under this section and forward it to the bureau.

### Subd. 4a. Information required to be provided.

(a) A person required to register under this section shall provide to the corrections agent or law enforcement authority the following information:

(1) the person's primary address; (2) all of the person's secondary addresses in Minnesota, including all addresses used for residential or recreational purposes; (3) the addresses of all Minnesota property owned, leased, or rented by the person; (4) the addresses of all locations where the person is employed; (5) the addresses of all schools where the person is enrolled; and (6) the year, model, make, license plate number, and color of all motor vehicles owned or regularly driven by the person.

(b) The person shall report to the agent or authority the information required to be provided under paragraph (a), clauses (2) to (6), within five days of the date the clause becomes applicable. If because of a change in circumstances any information reported under paragraph (a), clauses (1) to (6), no longer applies, the person shall immediately inform the agent or authority that the information is no longer valid. If the person leaves a primary address and does not have a new primary address, the person shall register as provided in subdivision 3a.

## NATURE OF THE ACTION

4.    Plaintiffs bring this action on behalf of themselves alleging violations of their constitutional, statutory and common law rights. Specifically, Plaintiffs allege that the Defendants, in their official capacity and individual capacities, have, among other things:

a.    denied Plaintiffs release from their confinement to the community after serving their executed sentence without a hearing as intended by the legislature when serving out their criminal sentence, thus violating the Fourteenth Amendment to the United States Constitution;

b.    placed Plaintiffs in jeopardy twice when the criminal courts imposed conditional release terms which was also enhanced to residential sex offender treatment by a civil court without first violating conditions of release requiring a hearing as indicted by Minn. Stat. § 609.3455, subd. 8(b); violating the Fifth Amendment to the United States Constitution;

c.    enhanced community based sex offender treatment to residential sex offender treatment based upon additional criminal elements without criminal procedural

protections; violating the Fourteenth Amendment to the United States Constitution;

    d.    unreasonably supervised Plaintiffs by directing Minnesota Department of Human Services employees to supervise Plaintiffs' imposed punishment by the criminal court violating the Fourteenth Amendment to the United States Constitution; and

    e.    failed to properly supervise and train the offending employee caused the constitutional violation at issue.

5.    Plaintiffs seek declaratory relief, as well as compensatory and monetary damages for these constitutional violations. Plaintiffs make clear that they seek compensatory and monetary damages in Defendants individual capacities only. Plaintiffs seek declaratory and injunctive relief in Defendants Official capacities only.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs state law claims pursuant to 28 U.S.C. § 1367.

7.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391, because the acts and omissions giving rise to these claims occurred in the State of Minnesota and Defendants resides in the State of Minnesota.

## DECLARATORY AND INJUNCTIVE RELIEF

8.    This Court has authority to grant declaratory relief pursuant to 28 U.S.C.§ 2201 as an actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration.

9.    The Act also provides the Court with authority to grant injunctive and other necessary and proper relief. 28 U.S.C. § 2202.

## PARTIES

### I. Plaintiffs

10.    Plaintiff Austin Black Elk is currently serving a criminally imposed conditional release term at the Minnesota Sex Offender Program located at 1111 Hwy 73, Moose Lake, Minnesota 55767. He has been and continues to be injured by the acts and omissions of Defendants.

11.    Plaintiff Guy I. Green is currently serving a criminally imposed conditional release term at the Minnesota Sex Offender Program located at 1111 Hwy 73, Moose Lake, Minnesota 55767. He has been and continues to be injured by the acts and omissions of Defendants.

12.    Plaintiff Michael Perseke is currently serving a criminally imposed conditional release term at the Minnesota Sex Offender Program located at 1111 Hwy 73, Moose Lake, Minnesota 55767. He has been and continues to be injured by the acts and omissions of Defendants.

13.    Plaintiff Aaron Hayes is currently serving a criminally imposed conditional release term at the Minnesota Sex Offender Program located at 1111 Hwy 73, Moose Lake, Minnesota 55767. He has been and continues to be injured by the acts and omissions of Defendants.

14.    Plaintiff Michael Whipple is currently serving a criminally imposed conditional release term at the Minnesota Sex Offender Program located at 1111 Hwy 73, Moose Lake, Minnesota 55767. He has been and continues to be injured by the acts and omissions of Defendants.

15.    Plaintiff Shannon D. Hollie is currently serving a criminally imposed conditional release term at the Minnesota Sex Offender Program located at 1111 Hwy 73, Moose Lake, Minnesota 55767. He has been and continues to be injured by the acts and omissions of Defendants.

16.    Plaintiff Gary Spicer is currently serving a criminally imposed conditional release term at the Minnesota Sex Offender Program located at 1111 Hwy 73, Moose Lake, Minnesota 55767. He has been and continues to be injured by the acts and omissions of Defendants.

17.    Plaintiff Rodney Thundercloud is currently serving a criminally imposed conditional release term at the Minnesota Sex Offender Program located at 1111 Hwy 73, Moose Lake, Minnesota 55767. He has been and continues to be injured by the acts and omissions of Defendants.

18.    Plaintiff Thomas Milton is currently serving a criminally imposed conditional release term at the Minnesota Sex Offender Program located at 1111 Hwy 73, Moose Lake, Minnesota 55767. He has been and continues to be injured by the acts and omissions of Defendants.

19..    Plaintiff Justin Jacobson is currently serving a criminally imposed lifetime conditional release term at the Minnesota Sex Offender Program located at 1111 Highway 73, Moose Lake, Minnesota 55767-9452. He has been and continues to be injured by the acts and omissions of Defendants.

20.    Plaintiff August Kingbird is currently serving a criminally imposed conditional release term at the Minnesota Sex Offender Program located at 1111 Highway 73, Moose Lake, Minnesota 55767-9452. He has been and continues to be injured by the acts and omissions of Defendants.

21.    Plaintiff Nick Olson is currently serving a criminally imposed lifetime conditional release term at the Minnesota Sex Offender Program located at 1111 Highway 73, Moose Lake, Minnesota 55767-9452. He has been and continues to be injured by the acts and omissions of Defendants.

22.    Plaintiff Terrance L. Holliday is currently serving a criminally imposed 10-year conditional release term at the Minnesota Sex Offender Program located at 1111 Highway 73, Moose Lake, Minnesota 55767-9452. He has been and continues to be injured by the acts and omissions of Defendants.

23.    Plaintiff  Jamie A. Andrews is currently serving a criminally imposed 10-year conditional release term at the Minnesota Sex Offender Program located at 1111 Highway 73, Moose Lake, Minnesota 55767-9452. He has been and continues to be injured by the acts and omissions of Defendants.

## II. Defendants

24.    Defendant Thomas Roy is the Commissioner of the Department of Corrections ("DOC"). The DOC is responsible for operating the Minnesota Department of Corrections. Defendant Roy is also responsible for overseeing the conditional release statute at issue is imposed upon Plaintiffs (all sex offenders committed to the Department of Corrections), including but not limited to violating Plaintiffs if they fail to follow any of the rules set forth in the conditional release statute and in their conditions of release. Defendant Roy, in his individual and official capacity, implemented, retained and carried out policies that violated the constitutional rights of Plaintiffs.

25.    Defendant Emily Johnson Piper is the Commissioner of the Minnesota Department of Human Services ("DHS"). The DHS is responsible for operating MSOP. Defendant Piper, in her individual and official capacity, implemented, retained and carried out policies through MSOP violating the constitutional rights of Plaintiffs.

26.    Defendant Nancy Johnston is the Executive Director of MSOP and a member of the clinical team. Defendant Johnston, in her individual and official capacity, implemented, retained and carried out policies through MSOP violating the constitutional rights of Plaintiffs.

27.    Defendant Lori Swanson is the Attorney General of Minnesota. Defendant Swanson, in her individual and official capacity, implemented, retained and carried out policies through the state conditional release statute violating the constitutional rights of Plaintiffs.

28.    In all respects material to this action, all Defendants acted under the color of law and under the color of their authority as officers and employees of the State of Minnesota.

29.    In all respects material to this action, all Defendants acted outside of the scope of their employment with the State of Minnesota, exceeding the legitimate scope of their official capacity as intended by state law.

30.    Plaintiffs have suffered and continue to suffer losses as a direct result of Defendants actions and they are entitled to a declaration upon their rights and further compensatory and punitive damages as a direct and proximate result of Defendants wrongful conduct as alleged herein. Absent relief, Plaintiffs will continue to suffer from these losses, thereby allowing Defendants' violation of law to proceed without remedy.

## FACTS

31.    All of the named Plaintiffs in this complaint have fully expired their executed sentence and are now serving a court imposed term of conditional release by one of the Minnesota's Judicial District, Criminal Division.

### I.    Brief History Of Minnesota's Conditional Release Terms

32.    Minnesota's statute requiring conditional release for certain sex offenders has had its issues and concerns for many years by the courts and been renumbered several times by the legislature. Originally codified at section 609.346, subdivision 5.

33.    Some of the original language reduced the conditional-release term by the "time the person [or offender] served on supervised release" was in effect beginning in 1993. *See* 1993 Minn. Laws ch. 326, art. 9, 9, at 2089 (adding conditional release to section 609.346, subdivision 5); 1998 Minn. Laws ch. 367, art. 6, 6, at 731 (renumbering conditional release provision as section 609.109, subdivision 7(a)); 2005 Minn. Laws ch. 136, art. 2, 21, at 931 (renumbering conditional-release provision as section 609.3455, subdivision 6, and increasing term to ten years).

34.    In 1992, Minnesota Legislation passed the conditional release statute, applied to criminal sexual conduct crimes occurring on or after August 1, 1992. *See* Act of April 29, 1992, ch. 571, art. 1, 25 & 29, 1992 Minn. Laws 1983, 2002-04 (codified at Minn. Stat. 609.346, subd. 5 (1992). When first enacted, the period of conditional release, then called a "supervised release term," was imposed for "not less than" five or ten years.

35.    In 1993, the terminology "supervised release term" was changed to "conditional release," and the legislature deleted the words "not less than" preceding the specification of the five- or ten-year terms. Act of May 20, 1993, ch. 326, art. 9, 9, 1993 Minn. Laws 1974, 2089 (codified as Minn. Stat. 609.346, subd. 5 (1994)).

36.    The conditional release term was changed to a straight five or ten years, minus the time the person served on supervised release. Act of May 20, 1993, 9, 1993 Minn. Laws at 2089. The legislature further adopted the description "supervised release" to define the period of mandatory community supervision following imprisonment if the inmate was released early due to having earned good time. Minn. Stat. 244.05, subd. 1 (2002). The period of supervised release is typically one-third of the original pronounced sentence.

Minn. Stat. 244.04, subd. 1, 244.05, subd. 1 (2002).

37.    In 2006, the Legislature once again made changes, repealing the conditional release laws under Minn. Stat. 609.109 and replaced a large section in part, recodifing at Minn. Stat. 609.3455. 2006 Minn. Laws ch. 260, art. 1, 48, at 732.

38.    In 2013, the Minnesota legislature amended section 609.3455, subdivision 6. The amendment provides that "after the offender has been released from prison, the commissioner shall place the offender on conditional release for ten years." 2013 Minn. Laws, ch. 96, 3, at 744 (emphasis added).

39.    The amendment removes the language "minus the time the offender served on supervised release." *Id.* The legislature described this amendment as "clarifying when conditional release terms of certain offenders begin." *Id.*, ch. 96, at 743. During a committee meeting on the bill, one of its authors stated that it effectuates what "was the legislative intent when this conditional release language was originally passed by the legislature." Hearing on H.F. No. 709 Before the H. Comm. on Pub. Safety Fin. & Policy (Mar. 19, 2013) (statement of Rep. Johnson). Under the amendment, an offender begins serving both supervised and conditional release together at the time the offender is released from prison.

## II. Administrative Interpretation

40.    The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions. When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be

disregarded under the pretext of pursuing the spirit. When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, legislative and administrative interpretations of the statute. *Id.* Minn. Stat. 645.16 (8)

41.    The Minnesota legislature has authorized the DOC to adopt rules governing the procedures for granting and revoking conditional and supervised release. Minn. Stat. 243.05, subd. 2 (2004), 244.05, subd. 2 (Supp. 2005). The DOC rules define "supervised release" as "that portion of a determinate sentence served by an inmate in the community under supervision and subject to prescribed rules." Minn. R. 2940.0100, subp. 31 (2005) (emphasis added). This administrative interpretation is consistent with our conclusion that time "served on supervised release" refers to a period after the offender's actual release from prison.

### I.    Purpose Of Supervised And Conditional Release

42.    Minnesota's Supreme Court in *State v. Ward*, determined that "[t]he purpose of both supervised release and conditional release is to provide continuous supervision of a sex offender after release from prison." 847 N.W.2d 29, 33 (Minn. App. 2014), *review granted and stayed* (Minn. June 17, 2014), *stay vacated and review denied* (Minn. Mar. 17, 2015).

43.    The court concluded that "because the conditional-release term for a sex offender is a fixed . . . term," it is apparent that a "purpose of conditional release is to maintain supervision of a sex offender for a minimum length of time." *Id.* The purposes of supervised and conditional release are met "[w]hen an offender spends time in the community on supervised release and the time is deducted from the offender's

conditional-release term." *Id.*

44.    But these purposes are not met if the last one-third of an offender's sentence is automatically deducted from the conditional-release term regardless of whether the offender served time in the community on supervised release. *See id.* ("Both purposes are not served if an offender on supervised release is returned to prison and the offender's conditional release is reduced by the additional time spent in prison."). Deducting time served in prison during an offender's executed sentence violates the purposes of conditional release by reducing the total time the offender serves under supervision in the community to less than the full ten-year conditional-release term.

45.    After reviewing the broader statutory sentencing scheme; the 2013 legislative clarification, the DOC administrative interpretation; and the purposes of supervised and conditional release, concludes that time "served on supervised release" refers to a time during the offender's executed sentence after the offender is actually released from prison.

### A. Mandatory Ten-Year Conditional Release Term

46.    Notwithstanding the statutory maximum sentence otherwise applicable to the offense and unless a longer conditional release term is required in subdivision 7, when a court commits an offender to the custody of the commissioner of corrections for a violation of section 609.342, 609.343, 609.344, 609.345, or 609.3453, the court shall provide that, after the offender has been released from prison, the commissioner shall place the offender on conditional release for ten years. *Id.* Minn. Stat. § 609.3455, subd 6.

### B.    Mandatory Lifetime Conditional Release Term.

47.    When a court sentences an offender under subdivision 3 or 4, the court shall provide that, if the offender is released from prison, the commissioner of corrections shall place the offender on conditional release for the remainder of the offenders life. *Id.* Minn. Stat. § 609.3455, subd 7a.

48.    Notwithstanding the statutory maximum sentence otherwise applicable to the offense, when the court commits an offender to the custody of the commissioner of corrections for a violation of section 609.342, 609.343, 609.344, 609.345, or 609.3453, and the offender has a previous or prior sex offense conviction, the court shall provide that, after the offender has been released from prison, the commissioner shall place the offender on conditional release for the remainder of the offenders life. *Id.* Minn. Stat. § 609.3455, subd. 7 b.

49.    Notwithstanding paragraph (b), an offender may not be placed on lifetime conditional release for a violation of section 609.345, unless the offender's previous or prior sex offense conviction is for a violation of section 609.342, 609.343, 609.344, or 609.3453, or any similar statute of the United States, this state, or any other state. *Id.* Minn. Stat. § 609.3455, subd. 7 c.

### C. Terms Of Conditional Release; Applicable To All Sex Offenders.

50.    The provisions of this subdivision relating to conditional release apply to all sex offenders sentenced to prison for a violation of section 609.342, 609.343, 609.344, 609.345, or 609.3453. Except as provided in this subdivision, conditional release of sex offenders is governed by provisions relating to supervised release. The commissioner of

corrections may not dismiss an offender on conditional release from supervision until the offenders conditional release term expires. *Id.* Minn. Stat. § 609.3455, subd. 8a.

51.     The conditions of release may include successful completion of treatment and aftercare in a program approved by the commissioner, satisfaction of the release conditions specified in section 244.05, subdivision 6, and any other conditions the commissioner considers appropriate. The commissioner shall develop a plan to pay the cost of treatment of a person released under this subdivision. The plan may include co-payments from offenders, third-party payers, local agencies, or other funding sources as they are identified. This section does not require the commissioner to accept or retain an offender in a treatment program. Before the offender is placed on conditional release, the commissioner shall notify the sentencing court and the prosecutor in the jurisdiction where the offender was sentenced of the terms of the offenders conditional release. The commissioner also shall make reasonable efforts to notify the victim of the offenders crime of the terms of the offenders conditional release. *Id.* Minn. Stat. § 609.3455, subd. 8b.

52.     If the offender fails to meet any condition of release, the commissioner may revoke the offenders conditional release and order that the offender serve all or a part of the remaining portion of the conditional release term in prison. An offender, while on supervised release, is not entitled to credit against the offenders conditional release term for time served in confinement for a violation of release. *Id.* Minn. Stat. § 609.3455, subd. 8c.

## IV.    Civil Commitment to the MSOP

53.    All civilly committed sex offenders are indefinitely committed to the MSOP, which is a treatment program with secure facilities in Moose Lake, MN and St Peter, MN. The Moose Lake facility houses patients in the first two phases of the treatment program. The St. Peter facility houses patients in the third and final stage of the program.

54.    Defendants do not provide an assessment at the time the individual is first civilly committed to MSOP to determine what phase of the program the individual should be in or whether the individual, in fact, should be committed to either the Moose Lake or St. Peter facilities, or whether they could be treated in a less restrictive environment.

### 1.    MSOP Treatment Facilities

55.    The only MSOP facilities are the secure treatment locations at Moose Lake and St. Peter. The MSOP does not provide for any less restrictive alternatives to confinement at Moose Lake or St. Peter, such as halfway houses or other less secure facilities. Plaintiffs are not arguing their commitments in this lawsuit. Plaintiffs are only giving the Court a procedural history and background of the issues underlying the Conditional Release/Registration, along with the conditions of release regarding the completion of MSOP treatment and the revocation of conditional release for not completing the treatment program for those civilly committed to the MSOP.

56.    *See* Office of the Legislative Auditor, State of Minnesota, Evaluation Report: Civil Commitment of Sex Offenders (March 2011), available at http://www.auditor.leg.state.mn.us/ped/pedrep/ccso.pdf. The Legislative Auditor found that Minnesota's civil commitment scheme for sex offenders suffers from major

problems, including the fact that it is incredibly costly, lacks reasonable less restrictive

alternative confinements, and does not provide adequate treatment to those who are

committed to the MSOP. Plaintiffs are not arguing their commitments in this lawsuit.

Plaintiffs are only giving the Court a procedural history and background of the issues

underlying the Conditional Release/Registration, along with the conditions of release

regarding the completion of MSOP treatment and the revocation of conditional release

for not completing the treatment program for those civilly committed to the MSOP.

57.    Other states, such as Texas, provide such alternatives. In Texas, all civilly

committed sex offenders are part of an outpatient treatment program in which they are

subject to constant supervision, GPS monitoring, and intensive treatment. If they fail to

meet the conditions of their commitment, they are charged with a felony and must return

to prison. *See* Legislative Auditor Report at 42-43. Plaintiffs are not arguing their

commitments in this lawsuit. Plaintiffs are only giving the Court a procedural history and

background of the issues underlying the Conditional Release/Registration, along with the

conditions of release regarding the completion of MSOP treatment and the revocation of

conditional release for not completing the treatment program for those civilly committed

to the MSOP.

58.    Similarly, in Wisconsin, when civilly committed sex offenders progress in

treatment to a point where it is substantially probable they will not reoffend, they are

placed on supervised release. *See* Wisconsin's Sexually Violent Person Law, Chapter 980:

Supervised    Release    Program    (Jan.    19,    2012).    http://www.dhs.state.mn.

us/main/groups/agencywide/documents/pub   /dhs16_166453.pdf.    Plaintiffs    are    not

arguing their commitments in this lawsuit. Plaintiffs are only giving the Court a procedural history and background of the issues underlying the Conditional Release/Registration, along with the conditions of release regarding the completion of MSOP treatment and the revocation of conditional release for not completing the treatment program for those civilly committed to the MSOP.

59.    In New York, civilly committed sex offenders can be immediately placed in an outpatient program called Strict and Intensive Supervision and Treatment in which the patient participates in individualized treatment, has monthly meetings with a case officer, and is electronically monitored. *See* New York Sex Offender Management and Treatment Act: An Overview of NYS Strict and Intensive Supervision and Treatment (SIST) (Jan. 19,    2012)    http://www.dhs.state.mn.    us/main/groups/    agencywide /documents/pub/dhs16_166450.pdf. Plaintiffs are not arguing their commitments in this lawsuit. Plaintiffs are only giving the Court a procedural history and background of the issues underlying the Conditional Release/Registration, along with the conditions of release regarding the completion of MSOP treatment and the revocation of conditional release for not completing the treatment program for those civilly committed to the MSOP.

60.    Upon entering the Moose Lake MSOP facility, all Plaintiffs and Class members are presented with a contract entitled Consent for Participation in Sex Offender Treatment. Each Plaintiff and Class member is required to either sign the portion of the form consenting to receive the treatment MSOP provides according to its treatment program and policies, or sign the portion of the form stating they refuse to participate in

sex offender treatment. Each Plaintiff and Class member is then evaluated and given an individual treatment plan. Plaintiffs are not arguing their commitments in this lawsuit. Plaintiffs are only giving the Court a procedural history and background of the issues underlying the Conditional Release/Registration, along with the conditions of release regarding the completion of MSOP treatment and the revocation of conditional release for not completing the treatment program for those civilly committed to the MSOP.

61.    The contract provides that the patient's primary therapist discussed the course of treatment at the MSOP, that the patient received information about the levels of care and stages of treatment, that the patient has received the goals and behavioral expectations at MSOP, that upon completion of treatment the MSOP will support their petition for provisional discharge, that each stage of treatment has specific goals and behavioral expectations, that services such as education and vocation are provided, that failure to participate in treatment may prolong civil commitment status, that the patient will need to reveal information about past crimes, and that treatment officials must report any previously unreported child or vulnerable adult victims they learn of from the patient.

62.    The MSOP has program-wide jurisdiction of the Minnesota Department of Corrections to provide procedures for monitoring the compliance of clients under the dual jurisdiction of the Minnesota Department of Human Services and the Minnesota Department of Corrections. *Id.* Minn. Stat. §§ 246.014, subd. (d) and 246.13. Plaintiffs are not arguing their commitments in this lawsuit.

63.     The Office of Special Investigations[2] (OSI) serves as a liaison between the MSOP and the DOC for supervision purposes which violates clients not actively participating in MSOP treatment who are on conditional release for periods of five years, ten years and lifetime. If clients who are on conditional release are not actively participating in MSOP's treatment program, OSI contacts the client's ISR/Parole agent(s) and in consultation with the ISR/Parole agent(s) violates the person(s) not actively participating in MSOP treatment and revokes their conditional release for a period of time. *i.e., six months, one year etc.* Plaintiffs are not arguing their commitments in this lawsuit. Plaintiffs are only giving the Court a procedural history and background of the issues underlying the Conditional Release/Registration, along with the conditions of release regarding the completion of MSOP treatment and the revocation of conditional release for not completing the treatment program for those civilly committed to the MSOP.

64.     Per MSOP Division Policy 210-5100, "Admission to the MSOP," upon client admission, the MSOP Admissions Coordinator obtains a copy of the client's conditions of release from the DOC's Corrections Operations Management System (COMS) or by other means, and routes the conditions of release to Health Information Management Services (HIMS) for filing in the client record. Plaintiffs are not arguing their commitments in this lawsuit. Plaintiffs are only giving the Court a procedural history and background of the issues underlying the Conditional Release/Registration, along with the conditions of release regarding the completion of MSOP treatment and the revocation of conditional release for not completing the treatment program for those civilly committed

---

[2]  Hereinafter referred to as OSI.

to the MSOP.

65.    The primary therapist incorporates the client's conditions of release into the client's treatment plan as appropriate. The primary therapist monitors the client's compliance with his/her conditions of release. If the primary therapist determines the client may be in violation of the conditions of release, the primary therapist notifies his/her clinical supervisor and associate clinical director of the possible violations. The primary therapist, clinical supervisor, and associate clinical director will meet with the client to discuss any needed modifications to the conditions of release. The primary therapist, clinical supervisor and associate clinical director may recommend modifications to the conditions of release to enable the client to address an emerging treatment need, such as the removal of a condition for the purpose of building support, restorative justice or family reunification. Plaintiffs are not arguing their commitments in this lawsuit. Plaintiffs are only giving the Court a procedural history and background of the issues underlying the Conditional Release/Registration, along with the conditions of release regarding the completion of MSOP treatment and the revocation of conditional release for not completing the treatment program for those civilly committed to the MSOP.

66.    The associate clinical director sends the request for modifications to the conditions of release to the OSI Director. The OSI Director contacts the client's corrections agent and relays the request for the modification of the conditions of release. The OSI Director sends the determination from the corrections agent to the associate clinical director when it is received. Plaintiffs are not arguing their commitments in this lawsuit. Plaintiffs are

only giving the Court a procedural history and background of the issues underlying the Conditional Release/Registration, along with the conditions of release regarding the completion of MSOP treatment and the revocation of conditional release for not completing the treatment program for those civilly committed to the MSOP. However, Plaintiffs want the Court to know about how the Statute works and how Plaintiffs can be violated while residing at the MSOP-Moose Lake or St. Peter sites.

### b.     Violations of Conditions of Release.

67.     If the primary therapist determines that the client continues to violate his or her conditions of release and believes HRU action may be appropriate, the primary therapist consults with his/her clinical supervisor. If the clinical supervisor (in consultation with the facility director) agrees to request a restructure of the client's conditions, he/she consults with the facility clinical director and/or associate clinical director or Community Preparation Services (CPS) Director as appropriate. If the facility clinical director (in consultation with the facility director) and/or associate clinical director support requesting a restructure, he/she will coordinate the request with OSI staff and Community Preparation Services (CPS) Director as appropriate.

68.     The OSI staff will obtain pertinent records from the Legal and Records Department and draft a report for the corrections agent. The report will be forwarded to the corrections agent, who is able to modify the conditions of release as he/she deems necessary. If a client engages in assaultive/egregious rule breaking or felony criminal activity, OSI may submit a report to the corrections agent requesting HRU action prior to notifying the associate clinical director. The client's treatment team will review the

client's current level of liberty.

69.    If a client is restructured or revoked by the HRU, OSI staff conducting the case will complete an entry in the Electronic Communication Log and an Incident Report detailing the outcome of the HRU action.

      c.    **Revocation - Request to Return to a Minnesota Department of Corrections Facility**

70.    If the client continues to violate the conditions of release, the associate clinical director will contact OSI. OSI staff will: a) collect any physical evidence related to incidents; b) obtain supporting documentation of the client's non-compliance from the Legal and Records Department; c) consult with the treatment team; and d) prepare a report for the corrections agent. If the corrections agent supports a revocation hearing, the agent notifies the DOC Hearings and Release Unit. If the DOC Hearings and Release Unit supports the recommended revocation hearing, the OSI staff will coordinate with DOC Hearings and Release Unit staff to schedule the hearing. When a revocation/restructure case is opened by HRU, the OSI staff conducting the case will complete an Electronic Communication Log entry to notify MSOP staff of the case. Clients may not appeal a DOC Hearings and Release Unit hearing decision to the Minnesota Sex Offender Program. *Id.* MSOP Policy 107.300

71.    Defendants Roy, Johnson-Piper, and Johnston were aware that each Plaintiff was not released to the community as intended by the conditional release statute, and in some instances applied the law retroactively and deprived them of their right to refuse medical treatment by threats of revoking their conditional release while at the MSOP, which is

overly abhorrent under state law.

72.     Plaintiffs bring this suit pursuant 42 U.S.C. § 1983, because every person who, under color of any statute…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

## IV. REGISTRATION

73.     In 1991, the Minnesota Legislature created Minnesota Statute 243.166 (registration of predatory offenders) and have amended it several times since its inception. *See* 1991 c 285 s 3; 1993 c 326 art 10 s 1-7; 1994 c 636 art 4 s 5-8; 1Sp1994 c 1 art 3 s 1,2; 1995 c 226 art 4 s 3; 1996 c 408 art 5 s 2,3; 1997 c 239 art 5 s 1-3; 1998 c 367 art 3 s 1-3, art 6 s 15; 1999 c 127 s 1; 1999 c 139 art 4 s 2; 1999 c 233 s 1-3; 2000 c 260 s 28; 2000 c 311 art 2 s 1-10; 1Sp2001 c 8 art 9 s 1-4; 2002 c 222 s 1; 2003 c 116 s 2; 1Sp2003 c 2 art 8 s 4,5; 2005 c 136 art 3 s 8, art 5 s 1; 1Sp2005 c 4 art 1 s 2,3; 2006 c 260 art 3 s 7-10; 2006 c 260 art 1 s 47; 2008 c 299 s 6,7; 2009 c 59 art 1 s 1; 2009 c 86 art 1 s 35-37; 2010 c 251 s 1,2; 2011 c 28 s 2; 2013 c 96 s 1; 2013 c 108 art 5 s 2, art 8 s 3; 2014 c 259 s 1-4; 2016 c 136 s 1,2; 2016 c 189 article 4, s 11. The creation of the registration statute of predatory offenders was to punish, and stigmatize sex offenders. The intent of the statute, was by design criminal in nature. The Minnesota Supreme Court has already

held that the registration statute is criminal/prohibitory in nature and not civil/regulatory. *State v. Jones*, 729 N.W. 2d 1 (Minn. Mar. 22, 2007) *reversed. See also Bryant v. State*, 2008 Minn. App. Unpub. Lexis 1360 (Minn. Ct. App. Nov. 25, 2008). The court held:

*Defendant pleaded guilty in the Ramsey County District Court (Minnesota) to failing to register as a predatory offender under Minn. Stat. § 243.166, subd. 5(a) (2006). He was sentenced to 17 months plus a mandatory 10-year period of conditional release under § 243.166, subd. 5a. Defendant appealed from the post-conviction court's denial of his petition to withdraw his plea. Because defendant was subject to a 10-year term of conditional release that was definite, automatic, and punitive under Minn. Stat. § 243.166, subd. 5a, and he was not aware of that requirement as required by Minn. R. Crim. P. 15.01, subd. (10)(c), his non-negotiated guilty plea was not intelligently made, and he was entitled to withdraw it.*

74. In this instance, the registration statute at issue, is a direct consequence that flows definitely, immediately, and automatically from the guilty plea/conviction, such as the maximum sentence and any fine to be imposed. Sentencing terms that are definite, automatic, and punitive are direct consequences for purposes of establishing manifest injustice to withdraw a guilty plea. The registration statute at issue in this case is also unconstitutional, because it is sufficiently punitive in nature, and it requires Plaintiffs and potential Class Members who have been convicted of a sex offense, to register as a predatory offender, including but not limited to informing law enforcement/corrections agents of: (1) current and primary address; (2) current work place(s); (3) current schools if necessary, (*i.e., post-secondary schools etc.*); (4) be photographed up to 4 times per

year; (5) community notification; (6) sex offender registry; (7) risk levels, *i.e. Level I, II, II*; (8) subject to public scrutiny; (8) subject to loss of jobs, friends and family.

75.    The conditional release and registration statutes together create an Affirmative Disability and Restraint on Plaintiffs and potential Class Members. Plaintiffs contend that even if they never change address(s) they are still required to adhere to the requirements set forth in paragraph 75 with regards to registration which is intertwined with the conditional release statute. Plaintiffs also contends not only does RPO (same as SORNA) impose major, direct disabilities and restraints such as in-person reporting and updating requirements that were not present in the statutes analyzed in *Smith* or *Williams II*, but it also imposes extraordinary secondary disabilities in finding and keeping housing, employment, and schooling, traveling out of state, and increases the likelihood the offender may be subject to violence and adverse social and psychological impacts. As such, the in-person reporting requirements, for both verification and changes to an offender's registration, is a direct restraint upon Plaintiffs and potential Class Members and this factor weighs in favor of finding Registration of Predatory Offender's effect to be punitive. Like the conditions imposed on probationers, registrants under Registration of Predatory Offenders (same as SORNA) must notify the state police of a change in residence or employment. Offenders also face incarceration for any noncompliance with the registration requirements. *See also* Minn. Stat. 243.166. Minn. Stat. 609.3455, and Minn. Stat. 243.166 operate to promote the traditional aims of punishment—retribution and deterrence. Minn. Stat. 243.166 promotes deterrence much like incarceration and probation; the prospect of being labeled a sex offender accompanied by registration

requirements and the public dissemination of personal information on the internet will deter the commission of sex offenses. Plaintiffs further allege that Registration of Predatory Offenders (RPO) has a retributive aspect since it applies only after an individual commits a crime, and the additional punishment for failure to register or provide accurate information, is related to retribution. Plaintiffs contend that distribution of private information online also exacts retribution.

76.    The information disseminated under the RPO goes beyond conviction data and includes sufficient information to allow members or the public to harass an offender, and thus endanger public safety. RPO is designed to have deterrent and retributive effects. Deterrence is an obvious goal of sex offender registration laws. As to the retribution portion, registration is imposed automatically upon a conviction regardless of the underlying circumstances or the actual risk an offender may offend again. Thus, the RPO exacts retribution for past crimes without regard to public safety interests. A conviction under this subsection may not lead to incarceration, but would nevertheless require registration as a sex offender for a ten-year to lifetime period. In such a case, and for many other predicate offenses listed in the tier system, RPO (SORNA) clearly aims at deterrence. Therefore, under the circumstances and the facts that RPO is retributive in effect, along with the facts that (SORNA) provisions act as deterrence for a number of predicate offenses, all weigh in favor of finding RPO and SORNA punitive.

## V.    The Individual Involvement Of Defendants.

77.    Defendant Thomas Roy is officially and personally responsible for bearing a relationship for creating and enforcing administratively imposed terms of conditional

release as intended by the legislature under Minn. Stat. 609.3455, Subd. 8(a). However, Defendant Roy continued to engage in the unlawful policy, custom, or practice of subjecting Plaintiffs continued confinement once their executed sentence had expired and was not released, though he knew or should have known Minn. Stat. 609.3455, subd. 6, 7 and 8; as plainly required Plaintiffs release to the community and were not afforded a hearing in a timely manner.

78.    Minn. Stat. 241.01 authorizes the Commissioner, to accept persons committed to the commissioner by the courts of this state for care, custody, and rehabilitation; to determine the place of confinement of committed persons in a correctional facility or other facility of the Department of Corrections and to prescribe reasonable conditions and rules for their employment, conduct, instruction, and discipline within or outside the facility; and to administer the money and property of the department. *Id.* Minn. Stat. 241.01 subd. 3a (a), (b), (c).

79.    Defendant Roy is officially and personally for his failure to act, based on his statutory duty to administer the Department of Corrections and supervise the administration of all institutions, facilities and services under the Department's jurisdiction and his authority to change policies. Defendant Roy implemented an unconstitutional policy to confine offenders beyond their executed sentence without a hearing. Defendant Roy personally participated in the alleged violation of Plaintiff rights by failing to train, supervise, alter or interpret statutory laws that restrains liberties.

80.    Defendant Johnson-Piper is officially and personally responsible for bearing a relationship for creating and enforcing administratively imposed terms of conditional

release as intended by the legislature under Minn. Stat. §§ 246.014, subd. (d) and 246.13. However, Johnson-Piper continues to engage in the unlawful policy, custom, or practice of subjecting Plaintiffs continued confinement once their executed sentence had expired and was not released, though she knew or should have known Minn. Stat. 609.3455, subd. 6, 7 and 8; as plainly required Plaintiffs release to the community and were not afforded a hearing in a timely manner. Defendant Johnson-Piper is also responsible her own failure to act, based on her statutory duty to administer the Department of Human Services and supervise the administration of all institutions, facilities and services under the Department's jurisdiction and her authority to change policies. Defendant Johnson-Piper, in her individual and official capacity, implemented, retained and carried out policies through the MSOP that violated and continue to violate Plaintiffs Fourth and Fourteenth Amendment rights to the United States Constitution.

81.    Defendant Johnson-Piper oversees the Minnesota Sex Offender Program which Administrative Promulgated Rules 95153000-3100, specifically require all staff must be trained and developed in the laws that are pertinent to the patient's rights and recognize what would constitute a violation of those rights. *Id.* Rule 95153070 subp. A.1.(3). Defendant Johnson-Piper, in her individual and official capacity, implemented, retained and carried out policies through the MSOP that violated and continue to violate Plaintiffs Fourth and Fourteenth Amendment rights to the United States Constitution.

82.    Defendant Johnston is officially and personally responsible for creating and enforcing administratively imposed terms of conditional release as intended by the legislature under Minn. Stat. Minn. Stat. 609.3455, Subd. 8(a). However, Johnston

continued to engage in the unlawful policy, custom, or practice of subjecting Plaintiffs continued confinement once their executed sentence had expired and was not released, though he knew or should have known Minn. Stat. 609.3455, subd. 6, 7 and 8; as plainly required Plaintiffs release to the community and were not afforded a hearing in a timely manner. Defendant Johnston, in her individual and official capacity, implemented, retained and carried out policies through the MSOP that violated and continue to violate Plaintiffs Fourth and Fourteenth Amendment rights to the United States Constitution.

83.     Defendant Johnston is the executive director of the Minnesota Sex Offender Program which Administrative Promulgated Rules 95153000-3100, specifically require all staff must be trained and developed in the laws that are pertinent to the patient's rights and recognize what would constitute a violation of those rights. *Id.* Rule 95153070 subp. A.1.(3). Defendant Johnston personally participated in the alleged violation of Plaintiffs rights by failing to train, supervise, alter or interpret statutory laws that restrains liberties. Defendant Johnston, in her individual and official capacity, implemented, retained and carried out policies through the MSOP that violated and continue to violate Plaintiffs Fourth and Fourteenth Amendment rights to the United States Constitution.

## VI.   Plaintiffs criminal history.

84.     In 1992, Plaintiff Black Elk was sentenced to 244 months in prison, which was twice the presumptive guidelines sentence. In 2006, Plaintiff Black Elk's parole and supervised release was violated. In 2010, Plaintiff Black Elk's 45 month sentence was nearing its end when a petition for civil commit was filed. There was no "compelling state interest" in imposing an illegal lifetime conditional release term. The trial court did

not have jurisdiction to enhance Plaintiff's sentence to a Lifetime conditional release, because the state did not prosecute Plaintiff by indictment as required by Minn. R. Crim. Proc. 17.01. Because of moral panic and outcry, the law under which Plaintiff Black Elk was sentenced produced an overly restrictive and unconstitutional law, therefore violating his constitutional rights under the Fourth, Eighth and Fourteenth Amendments. Therefore, the conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiff Black Elk.

85.    In April 1987 Plaintiff Guy I. Green was adjudicated delinquent and was placed at the Hennepin County Home School Sex Offender Program. In May 1990, Plaintiff was sentenced to serve 44 months in prison. In April of 1993 the Anoka County District Court denied a petition for involuntary civil commitment was filed against Plaintiff Green in December 1992. In February 1995, Plaintiff was sentenced to 62 months in prison. In July 1995, Plaintiff was sentenced to serve 88 months in prison for crimes he committed in June 1994. This crime was not sexual in nature. In January 2004, Plaintiff was alleged to have assaulted his then girlfriend. Plaintiff was convicted by a jury of terroristic threats and third-degree assault. This crime was not sexual in nature. Plaintiff Green was convicted of assaulting a Minnesota Sex Offender Staff person (MSOP), and given a five year conditional release period pursuant Minnesota Statute. Plaintiff Green never indicted by Minn. R. Crim. P. 17.01, or Minn. Stat. 609.3455,609.109, subd. 7 respectively, however was given a 5-year conditional release term. Due to this 5-year conditional release term upon Plaintiff, his Equal Protection rights were violated, because had he assaulted an EMS, a Police Officer or even a prison guard, a five (5) year conditional

release term for fourth degree assault would never have been imposed upon him. However, because Plaintiff Green was a civilly committed sex offender residing at MSOP, his Equal Protection rights were violated when a 5-year conditional release term was imposed upon him after the completion of his prison sentence for the assault on MSOP staff. After Plaintiff Green completed his prison term, a conditional release term was placed upon him, thus violating his constitutional rights under the Fourth, Tenth and Fourteenth Amendments under the United States Constitution.

86.    In 1986, Plaintiff Whipple was charged and convicted of First Degree Criminal Sexual Conduct in South Dakota. In July 2005, Plaintiff Whipple was charged in Minnesota with third-degree criminal sexual conduct. Plaintiff was never indicted under Minn. R. Crim. P. 17.01, or Minn. Stat. 609.3455, 609.109, subd. 7 respectively for any conditional release period to be imposed upon him. The trial court did not have jurisdiction to enhance Plaintiff's sentence to conditional release, because the state did not prosecute Plaintiff by indictment as required by Minn. R. Crim. Proc. 17.01. The conditional release imposed upon Plaintiff Whipple, violated his constitutional rights under the Fourth, Tenth and Fourteenth Amendments under the United States Constitution. Therefore, the conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiff Whipple.

87.    In 1983, Plaintiff Hollie pleaded guilty to criminal sexual conduct in Washington State. In 1993, Plaintiff Hollie was convicted by a jury of 1st Degree Attempted Murder and 1st Degree Burglary. Upon release from prison, Hollie was given a 10-year conditional release period. Plaintiff Hollie was never indicted under Minn. R. Crim. P.

17.01, or Minn. Stat. 609.3455, 609.109, subd. 7 respectively. The trial court did not have jurisdiction to enhance Plaintiff's sentence to conditional release, because the state did not prosecute Plaintiff by indictment as required by Minn. R. Crim. Proc. 17.01. Plaintiff's Constitutional rights under the Fourth, Tenth and Fourteenth Amendments under the United States Constitution were violated and are continue to be violated. Therefore, the conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiff Hollie.

88.    In 1994, Plaintiff Dunker was charged and convicted of sexually abusing his daughter. Plaintiff was given probation and sentenced to 8-months in the county jail. In 1998, Plaintiff was charged and convicted of First-Degree Criminal Sexual Conduct. Plaintiff was never indicted under Minn. R. Crim. P. 17.01, or Minn. Stat. 609.3455, 609.109, subd. 7 respectively in either conviction. The trial court did not have jurisdiction to enhance Plaintiff's sentence to conditional release, because the state did not prosecute Plaintiff by indictment as required by Minn. R. Crim. Proc. 17.01. The conditional release imposed upon Plaintiff Dunker, violated his constitutional rights under the Fourth, Eighth and Fourteenth Amendments. Plaintiff's Fourth, Tenth and Fourteenth Amendments under the United States Constitution were violated, and still being violated. Therefore, the conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiff Dunker.

89.    Plaintiff Michael Dewayne Perseke was charged and convicted in 1993 of Third-Degree Criminal Sexual Conduct in violation of Minn. Stat. 609.344, subd. 1(d). Plaintiff was sentenced to 48-months in prison and required to pay a $300.00 fine. In 1998,

Plaintiff was convicted of First-Degree Burglary (Minn. Stat. 609.582(1)(a)(1996), and Fourth-Degree Criminal Sexual Conduct (Minn. Stat. 609.345(1)(d)(1996). Plaintiff was never indicted under Minn. R. Crim. P. 17.01, or Minn. Stat. 609.3455, 609.109, subd. 7 respectively in either conviction. The trial court did not have jurisdiction to enhance Plaintiff's sentence to conditional release, because the state did not prosecute Plaintiff by indictment as required by Minn. R. Crim. Proc. 17.01. The conditional release imposed upon Plaintiff Perseke, violated his constitutional rights under the Fourth, Eighth and Fourteenth Amendments. Plaintiff's Fourth, Tenth and Fourteenth Amendments under the United States Constitution were violated, and still being violated. Therefore, the conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiff Perseke.

90.     In 2005, Plaintiff Gary Spicer pleaded guilty to Fifth-Degree Criminal Sexual Conduct and attempted Fifth-Degree Criminal Sexual Conduct. In 2008, Plaintiff pleaded guilty to Fourth-Degree Criminal Sexual Conduct and received a 24-month prison sentence. Plaintiff was never indicted under Minn. R. Crim. P. 17.01, or Minn. Stat. 609.3455, 609.109, subd. 7 respectively in either conviction. The trial court did not have jurisdiction to enhance Plaintiff's sentence to conditional release; because the state did not prosecute Plaintiff by indictment as required by Minn. R. Crim. Proc. 17.01. The conditional release imposed upon Plaintiff Spicer, violated his constitutional rights under the Fourth, Eighth and Fourteenth Amendments. Plaintiff's Fourth, Tenth and Fourteenth Amendments under the United States Constitution were violated, and still being violated. Therefore, the conditional release and registration statutes are unconstitutional on their

face and as applied to Plaintiff Spicer.

91.    In October 1989, Plaintiff Rodney Thundercloud pleaded guilty and was convicted of Second-Degree Criminal Sexual Conduct. In January of 1993, Plaintiff Thundercloud pleaded guilty to and was convicted of First-Degree Criminal Sexual Conduct. Plaintiff was sentenced to a prison term, and upon completion, a 10-year conditional release term was imposed upon him. Plaintiff was never indicted under Minn. R. Crim. P. 17.01, or Minn. Stat. 609.3455, 609.109, subd. 7 respectively in either conviction. The trial court did not have jurisdiction to enhance Plaintiff's sentence to a 10 year conditional release, because the state did not prosecute Plaintiff by indictment as required by Minn. R. Crim. Proc. 17.01. Plaintiff's Fourth, Tenth and Fourteenth Amendments under the United States Constitution were violated, and still being violated. Therefore, the conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiff Thundercloud.

92.    In 1994, Plaintiff Milton Thomas plead guilty to two (2) counts of Third-Degree Criminal Sexual Conduct. Plaintiff was sentenced to a 36-month prison term, and upon completion of that prison term a 10-year conditional release term was imposed upon him. The trial court did not have jurisdiction to enhance Plaintiff's sentence and order a conditional release period, because the state did not prosecute Plaintiff by indictment as required by Minn. R. Crim. Proc. 17.01. Plaintiff was never indicted under Minn. R. Crim. P. 17.01, or Minn. Stat. 609.3455, 609.109, subd. 7 respectively. Plaintiff's Fourth, Tenth and Fourteenth Amendments under the United States Constitution were violated, and still being violated. Therefore, the conditional release and registration statutes are

unconstitutional on their face and as applied to Plaintiff Thomas.

93.    In 2007, Plaintiff Jacobson was sentenced under Extended Juvenile Jurisdiction (EJJ) until he turned 21 years of age. Thereafter, Plaintiff was sentenced in 2009 to a prison term of 54-months and was given a Lifetime conditional release term. The trial court did not have jurisdiction to enhance Plaintiff's sentence to a Lifetime conditional release, because the state did not prosecute Plaintiff by indictment as required by Minn. R. Crim. Proc. 17.01. Plaintiff Jacobson's constitutional rights under the Plaintiff's Fourth, Tenth and Fourteenth Amendments under the United States Constitution were violated, and still being violated. Therefore, the conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiff Jacobson.

94.    In July 1998, Plaintiff Kingbird convicted by the district court of Criminal Sexual Conduct in the 1st degree. He was sentenced to an upward durational departure of 254 months from 127 months in prison. He was also sentenced to a 10 year conditional release period following the commencement of his prison term. In February 2017, Plaintiff Kingbird was convicted and sentenced to 12 months in prison for assaulting MSOP staff. This was a downward durational departure of 1 month. Plaintiff Kingbird was sentenced to a 5 year conditional release term to run concurrent of any time currently from date of conviction. Plaintiff Kingbird was never indicted under Minnesota Statute 609.3455, 609.109, subd. 7 respectively or Minnesota Rules of Criminal Procedure 17.01. Plaintiff's Fourth, Tenth and Fourteenth Amendments under the United States Constitution were violated, and still being violated. Therefore, the conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiff Kingbird.

95.    Plaintiff Olson was convicted in 2010 of criminal sexual conduct in the third degree and was sentenced to 36 months in the Minnesota Department of Corrections. Plaintiff Olson was given a 10 year conditional release period following his sentence. Plaintiff Olson was convicted 2015 of Criminal Sexual Conduct in the fourth degree. Plaintiff Olson was sentenced to 45 months in the Minnesota Department of Corrections. Plaintiff Olson was informed that he was subject to a lifetime conditional release period following his criminal sentence. Plaintiff Olson was never indicted under Minnesota Statute 609.3455, 609.109, subd. 7 respectively or Minnesota Rules of Criminal Procedure 15. Plaintiff's Fourth, Tenth and Fourteenth Amendments under the United States Constitution were violated, and still being violated. Therefore, the conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiff Olson.

96.    Plaintiff Andrews was adjudicated in 1995 as a delinquent of two counts of first-degree and one count of second-degree criminal sexual conduct. In July 2009, Plaintiff Andrews entered an *Alford* plea to charges of second-degree manslaughter and second-degree criminal sexual conduct. Plaintiff was sentenced to consecutive sentences of 57 months for manslaughter and 90 months for criminal sexual conduct. Plaintiff was also sentenced to a ten (10) year conditional release term upon completion of his prison sentence. Plaintiff was then petitioned for and was civilly committed to the Minnesota Sex Offender Program (MSOP) indefinitely. Plaintiff Andrews was never indicted under Minnesota Statute 609.3455, 609.109, subd. 7 respectively or Minnesota Rules of Criminal Procedure 15. Plaintiff's Fourth, Tenth and Fourteenth Amendments under the

United States Constitution were violated, and still being violated. Therefore, the conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiff Andrews.

97.    Plaintiff Holliday was convicted on March 14, 1999 on only count two of criminal sexual conduct. Plaintiff Holliday was placed on a five (5) year conditional release period after completion of his prison sentence. Plaintiff was sentenced to a 60-month prison term. Plaintiff Holliday was convicted in May 2005 and sentenced on an upward durational departure. Plaintiff was initially sentenced to 360 months in prison. Plaintiff appealed and the sentence was reversed. On remand the district court sentenced Plaintiff to 210 months in prison. Thereafter, upon completion of his prison sentence, Plaintiff was petitioned and was indefinitely civilly committed to the MSOP. Plaintiff Holliday was never indicted under Minnesota Statute 609.3455, 609.109, subd. 7 respectively or Minnesota Rules of Criminal Procedure 15. Plaintiff's Fourth, Tenth and Fourteenth Amendments under the United States Constitution were violated, and still being violated. Therefore, the conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiff Holliday.

98.    Plaintiffs should have been given, but were denied any and all safeguards which are fundamental rights essential to a fair trial, including the right to be indicted under the statute for any conditional release term. The Dangerous Sex Offender Statute (conditional release statute) means the making of a new charge leading to criminal punishment. This case is unlike other statutes where a habitual criminal issue is "a distinct issue" on which a defendant "must receive reasonable notice and an opportunity to be heard." Due

process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. There must be findings adequate to make meaningful any appeal that is allowed. None of these procedural safeguards mentioned is present under Minnesota's Sex Offenders Act, A/K/A Dangerous Sex Offender Act A/K/A/ conditional release statute.[3] Therefore the process under which Plaintiffs underwent was deficient as measured by the requirements of the United States Constitution. Defendants in their individual and official capacities, implemented, retained and carried out policies and procedures through Minnesota Statutes that are unconstitutional, violating Plaintiffs Fourth (Illegal Search and Seizure), Eighth Amendment (Cruel and Unusual Punishment), and Fourteenth Amendment (Substantive Due Process, Procedural Due Process, Equal Protection and Due Process) rights. Therefore, the conditional release statute violates Plaintiffs and potential Class Members Constitutional rights under the Fourth, Eighth and Fourteenth Amendments. Therefore, the conditional release statute is unconstitutional on its face and as applied to all Plaintiffs and any potential Class Member.

99.     Further, the emphasizes must be on how truly systemic the conditional release problem has become. Plaintiffs (and potential Class Members) were allowed to plead to a lesser criminal sexual conduct charge and often received concurrent sentences even though there may have been multiple victims involved, and, as defendants, were never advised of the "collateral consequence" of their crime(s). In some cases, defendants

---

[3]   Minn. Stat. 609.3455, subds. 6 & 7 (Dangerous Sex Offenders; Life Sentences; Conditional Release); formerly Minn. Stat. 609.108 (Repealed), Minn. Stat. 609.109 (Repealed); Minn. Stat. 609.346, subd. 5(a) (1996) (Now Minn. Stat. 609.3455)

(Plaintiffs) were allowed to enter a guilty plea, even though they proclaimed their innocence, by accepting the benefits of the plea bargain, more commonly known as an *Alford plea*. It is difficult to understand why the criminal justice system so heavily relies on plea agreements in criminal sexual conduct cases. This reliance is especially troubling given the provisions of Minn. Stat. § 609.3455, which authorizes a mandatory ten-year period of conditional release for a first-time offender and placing an offender with prior sex offense convictions on conditional release for the remainder of the offender's life. *See* Minn. Stat. § 609.3455, subds. 6, 7. In addition, Minn. Stat. authorizes mandatory life prison sentences for "egregious first-time offenders" and repeat offenders, as well as significant increases in the presumptive sentence under certain circumstances. *See* Minn. Stat. § 609.3455. Such plea negotiations, with few exceptions, have only proved to be a disservice to the entire system and have rarely served the interests of justice. Because of this disservice to the entire justice system, Defendants in their individual and official capacities, implemented, retained and carried out policies and procedures through Minnesota Statutes that are unconstitutional, violating Plaintiffs Fourth (Illegal Search and Seizure), Tenth Amendment (Necessary and Proper Clause) and Fourteenth Amendment (Substantive Due Process, Procedural Due Process, Equal Protection and Due Process) rights. Therefore, the conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiffs.

100.    The imposition and implementation of conditional release upon Plaintiffs, be it five (5) years, ten (10) years or lifetime, constitutes a violation of (Illegal Search and Seizure), Tenth Amendment (Necessary and Proper Clause) and Fourteenth Amendment

(Substantive Due Process, Procedural Due Process, Equal Protection and Due Process). The enactment of the conditional release statutes were a result of public disdain and outrage has led to increasingly harsher laws designed to punish, contain, and track sexual offenders. As a result, today, "no other population is more despised, more vilified, more subjected to media representation, and more likely to be denied basic Constitutional rights. Like most laws arising out of moral panics, laws governing sex offenders (such as Plaintiffs) have not been the product of traditional legislative deliberation. Rather than responding to empirical evidence suggesting that a chosen approach is appropriate, lawmakers developed legislation because of widespread fear.[4] Moreover, the imposition of the conditional release under Minn. Stat. 609.3455, 609.109, subd. 7 respectively, is unconstitutional on its face and as applied to Plaintiffs as they were never indicted by Statute.[5] These enactments of the conditional release statutes are largely premised on the

---

[4]  www.articles.latimes.com/1990-05-10/news/mn-1433_1_sexual-predator.    The Community Protection Act passed through the Washington legislature unanimously. *See* Norm Maleng, *The Community Protection Act and the Sexually Violent Predators Statute,* 15 U. Puget Sound L. Rev. 821, 822 (1992). *See also "Megan's Law."*

[5]  Minn. Stat. 609.3455. Subd. 10 reads in part: ***Presumptive executed sentences for repeat sex offenders—****"Except as provided in subdivision 2, 3,, 3a, or 4, if a person convicted under sections 609.342 to 609.345 or 609.3453 within 15 years of a previous sex offense conviction, the court shall commit the defendant to the commissioner of corrections for not less than three years, nor more than the maximum sentence provided by law for the offense for which convicted, notwithstanding sections 242.19, 243.05, 609.12, and 609.135. The court may stay the execution of the sentence imposed under this subdivision only if it finds that a professional assessment indicates the offender is accepted by and can respond to treatment at a long-term inpatient program exclusively treating sex offenders and approved by the commissioner of corrections. If the court stays the execution of a sentence, it shall include the following conditions or probation: (1) incarceration in a local jail or workhouse; and (2) a requirement that the offender successfully complete the treatment program and*

assumption that sex offenders cannot be rehabilitated and are a lingering threat to society. There is no empirical support for such assumptions. A core myth is that conditional release laws (same as SVP laws) prevent a vast number of sex crimes by incapacitating individuals who have abnormally high risk of recidivism --- as high as 80%.[6] Defendants, in their individual and official capacities, implemented, retained and carried out policies and procedures under Minn. Stat. 244.052, Minn. Stat. 243.166, Minn. Stat. 609.109, subd. 7, Minn. Stat. 609.108, Minn. Stat. 609.3455, subd. 7 and 10, that violated Plaintiffs (Illegal Search and Seizure), Tenth Amendment (Necessary and Proper Clause) and Fourteenth Amendment (Substantive Due Process, Procedural Due Process, Equal Protection and Due Process) rights. Therefore, the' conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiffs.

101.    The Court should intervene and carefully scrutinize the conditional release law, because it is the product of moral panics. Ordinarily, legislation is the product of a careful deliberative process, whereby legislators and their staff engage in study, evaluation, and debate over the merits of the bill. "The process of enactment, while perhaps not always perfect, includes deliberation and an opportunity for compromise and amendment, and usually committee studies and hearings." In this case, legislation was passed in response

---

*aftercare as directed by the court."* Thus, the district courts lack authority to enhance a defendant's sentence under Minn. Stat. 609.342, 609.343, 609.344, 609.345 by imposing a life sentence (or conditional release periods). *See also* Minn. R. Crim. P. 17.01

[6]    Recent studies show that this high-recidivism claim is false. *See also* www.bjs.gov/content/pub/pdf/rsorp94.pdf. Moral panic has driven the conditional release statutes to now, lifetime conditional release without due process of law, and without being indicted pursuant to the statute.

to moral panic and outcry and is divorced from data and evidence and is instead tied to emotions that over-inflates a danger of risk. The expansion of sex offender laws, like the one being challenged here (conditional release, and registration of predatory offenders), derives from moral panic that is untethered to empirical evidence about sex offenders. In the early 1990s, this State along with this Country, began developing an intense fear about the "dangers" posed by sex offenders. The media repeatedly reinforced the message that sexual predators posed threats that were both real and prevalent, and that no one and no place was safe. Since then, there have been an "endless supply of new laws intended to punish sex offenders in new and harsher ways," the conditional release statute and the registration statute are no different. The conditional release law was passed to give convicted sex offenders a double sentence and to punish them. Defendants in their individual and official capacities, implemented, retained and carried out policies and procedures through Minnesota Statutes that are unconstitutional as applied and as written, violating Plaintiffs (Illegal Search and Seizure), Tenth Amendment (Necessary and Proper Clause) and Fourteenth Amendment (Substantive Due Process, Procedural Due Process, Equal Protection and Due Process) rights. Therefore, the conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiffs.

102.   Plaintiffs challenge the conditional release and registration statutes, Minn. Stat. 609.3455, Stat. 243.166, on its face and as applied. Plaintiffs allege the conditional release and the registration statutes unconstitutionally applies as a double sentence and is designed as punishment. Plaintiffs, first allege the conditional release statute calls for a lifetime conditional release term for those who have a prior offense, which in Minnesota

a grand jury indictment is required for offenses punishable by life imprisonment. Under Minn. R. Crim. P. 17.01, the state must charge an offense by indictment, in order for a district court to have authority to impose an enhanced criminal sentence. In this instance, under Minn. R. Crim. P. 17.01, or Minn. Stat. 609.3455, 609.109, subd. 7 respectively conditional release statute requires and contains a provision for indictment. However, Plaintiffs were never indicted under Minn. R. Crim. P. 17.01, or Minn. Stat. 609.3455, 609.109, subd. 7 respectively. Defendants in their individual and official capacities, implemented, retained and carried out policies and procedures through Minnesota Statutes that are unconstitutional, violating Plaintiffs (Illegal Search and Seizure), Tenth Amendment (Necessary and Proper Clause) and Fourteenth Amendment (Substantive Due Process, Procedural Due Process, Equal Protection and Due Process) rights. Therefore, the conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiffs.

103.    Moreover, it is undisputable that a finding of dangerousness, (*i.e., patterned sex offender statute, dangerous sex offender etc.*) can have adverse social consequences to the individuals affected. Whether this labeled phenomena "stigma" or called something else is less important than what can be recognized and occur and that it can have a very significant impact on the individual. Due Process is violated because the Sex Offender Conditional Release Statute imposes punishment on the basis of a new finding of fact which was not an element of the crime for which the offender (individual) was convicted. Due process requires counsel, an opportunity to be heard, subpoena power, and the right of cross-examination. Therefore, under the Due Process Clause of the United States

Constitution, it is required that "procedural safeguards" of trial-type hearings before the State may impose increased sentence under "Sex Offender Act." *See* Minn. R. Crim. P. 17.01, or Minn. Stat. 609.3455, 609.109, subd. 7 respectively. In this case, the State did not require the procedural safeguards before imposing a conditional release term from 5 years to lifetime. The conditional release statute at issue, does not make the commission of a specified crime the basis for sentencing. It makes one conviction the basis for commencing another proceeding under another act to determine whether a person constitutes a threat of bodily harm to the public, or is an habitual offender and mentally ill. That is a new finding of fact******that is not and was not an ingredient of the offense charged.**** Because conditional release is a new finding, it makes a new charge criminal punishment. The conditional release statute and the registration statute being challenged here is unconstitutional because neither have any procedural safeguards, is punishment as Plaintiffs are punished a second time after the initial punishment of jail sentences or prison sentences and therefore must be held as unconstitutional on their face and as applied. Defendants in their individual and official capacities, implemented, retained and carried out policies and procedures through Minnesota Statutes that are unconstitutional, violating Plaintiffs (Illegal Search and Seizure), Tenth Amendment (Necessary and Proper Clause) and Fourteenth Amendment (Substantive Due Process, Procedural Due Process, Equal Protection and Due Process) rights. Therefore, the conditional release and registration statutes are unconstitutional on their face and as applied to Plaintiffs.

104.    When the proceeding "is closely related to the behavior of the person rather than to his mental condition considered apart from his behavior," as the Conditional Release Statute and the registration statute describes proceedings under the Patterned Sex Offender Statute or the Dangerous Sex Offender Statute, the constitutional guarantees implicit in due process must come into play. Under the Conditional Release and the Registration Statute, due process is not considered, and the "civil" intent of the legislature is instead "criminal." Because the conditional release and the registration statutes do not afford any procedures under the due process clause, Plaintiffs and potential Class Members who are convicted of sex offense(s) cannot be given indeterminate conditional release terms, as the imposition of the conditional release statute requires "a new finding of fact [that the person convicted constitutes a threat of bodily harm to the public] that was not an ingredient of the offense charged [at trial]." The conditional release and the registration statute renders it constitutionally suspect because the act fails to provide the safeguards under the United States Constitution. When enhanced punishment depends upon evidence of prior criminal convictions, defendants have the right to procedural due process. The conditional release and the registration statute, the procedures inherent in the statutes which sentences an offender (Plaintiffs) as a persistent (recidivist) offender does not comply with the requirements of due process where the state "wholly fails to demonstrate any evidence that defendant had notice of the proceedings or an opportunity to be present to challenge the statute. Therefore, the conditional release and the registration statute violates Plaintiffs and potential Class Members Constitutional rights under the Fourth, Eighth and Fourteenth Amendments. Therefore, because the conditional

release and the registration statute provides no procedural due process protections, it is incumbent upon this Court to hold the conditional release and the registration statute unconstitutional on its face and as applied.

105.    "[T]he safeguards of due process are not rendered unavailable simply because a determination may already have been reached that would stigmatize the defendant and that might lead to a significant impairment of personal liberty." Plaintiffs and potential Class Members have been stigmatized by the conditional release and the registration statute in the following ways: (1) being labeled as a predatory sex offender under the Level system as a Level 1, Level 2 or Level 3 sex offender; (2) having been convicted of a sex offense, subjected to Community Notification which includes: (a) notifying schools; (b) daycare centers; (c) places of work; (d) and any public place; (3) being photographed 1 to 4 times per year; (4) subjected to registration with the Minnesota Bureau of Criminal Apprehension 4 times a year; (5) being placed on Intensive Supervised Release (ISR); (6) subjected to random searches of living quarters, places of work, face-to-face contact with ISR agent(s) at places of work; (7) being placed on GPS ankle monitors after release from prison/jail; (8) photographing vehicles by ISR agents and/or police officers; (9) being subjected to residency restrictions upon release from prison; and (10) the conditions under the registration statute/conditional release statutes have subjected Plaintiffs and their families to a negative social stigma and resulted in *de facto* community notifications of their past wrongdoings. Therefore, the conditional release and the registration statute violates Plaintiffs and potential Class Members Constitutional rights under the Fourth, Eighth and Fourteenth Amendments. Therefore, the conditional

release and registration statutes are unconstitutional on their face and as applied to Plaintiffs.

106.    The Due Process Clause of the United States Constitution, stands ineluctably for the proposition that due process requires more of the States that they not exert state power in impermissible ways. Specifically, the rule is that State procedures are inadequate under the Due Process Clause unless they are designed to control arbitrary action and to make meaningful the otherwise available mechanism for judicial review. In other words, due process forbids the States to adopt procedures that would defeat the institution of federal judicial review. Therefore, the conditional release and the registration statutes violates Plaintiffs and potential Class Members Constitutional rights under the Fourth, (Illegal Search and Seizure), Tenth Amendment (Necessary and Proper Clause) and Fourteenth Amendment (Substantive Due Process, Procedural Due Process, Equal Protection and Due Process) rights.

107.    Plaintiffs Constitutional rights are also violated when, on conditional release and civilly committed to MSOP, they are forced to enter MSOP treatment and complete the program. However, there is no completion of the program. In addition, if Plaintiffs do not enter MSOP treatment program, they are subjected to being violated by MSOP (OSI Division) and the Department of Corrections (HRU Division). Any Plaintiff who is found in violation of not actively participating in MSOP treatment program while on any portion (i.e., 5, 10 or lifetime) of conditional release is sent back to the Department of Corrections on a violation. Therefore, the conditional release and the registration statutes violates Plaintiffs and potential Class Members Constitutional rights under the Fourth,

Eighth and Fourteenth Amendments. The conditional release statute is unconstitutional on its face and as applied. *See id paragraph 64.*

## CLAIMS FOR RELIEF

108.    Plaintiffs incorporates Paragraphs 1 through 110 above by reference in their claims for relief.

109.    Defendants acting under color of State Law, including but not limited to the policies and procedures thereto, have and continue to deprive Plaintiffs and potential Class Members of their rights, privileges and immunities secured by the Constitution of the United States.

110.    Plaintiffs have been and continue to be injured as a direct and proximate result of deprivations of their constitutional rights:

(a) to be free from unreasonable seizures and seizures without due process of law. *(i.e., requirement of registration as a predatory sex offender, being photographed for registration and notification purposes, being subjected to Intensive Supervised Release (ISR); being subjected to random searches of their houses, papers and affects*);

(b) to be free from the illegal and unconstitutional punishments of being subjected to conditional release and registration without being indicted under Minn. R. Crim. P. 17.01, or Minn. Stat. 609.3455, 609.109, subd. 7 respectively, without due process of law and without the proper constitutional safeguards required by the United States Constitution;

(c) to be free from the denial of Equal Protection of the Law without due process.

(d) to be free from violations and sent back to prison for exercising a constitutional right not to participate in MSOP's non-mandatory treatment program or not registering because of residing at MSOP-Moose Lake or St. Peter;

(d) that the court order Defendants to cease and desist the Conditional Release Statute.

(e) that it be declared Defendants have violated, and continue to violate Plaintiffs Fourth, Eighth and Fourteenth Amendment rights;

(f) Defendants are ordered to take reasonable steps to prevent any punitive acts or retaliation against Plaintiffs for the purpose of punishing Plaintiffs for bringing this lawsuit or participation in any way in its preparation or in order to prevent Plaintiffs from enjoying their lawful and constitutional rights as determined not only by this Court, but by the United States Constitution.

## V.    RELIEF

A.    All appropriate declaratory and injunctive relief declaring the Constitutional rights to which Plaintiffs are entitled.

B.    All appropriate preliminary and permanent injunctions requiring Defendants to provide all Constitutional rights to which Plaintiffs and potential Class Members are entitled.

C.    Plaintiffs requests a jury trial in this matter.

D.    Judgment in favor of Plaintiffs and potential Class Members against Defendants, jointly and severally, for compensatory, monetary damages in amounts to be determined by the jury at trial.

E.    Injunctive relief enjoining Defendants from further use of the Conditional Release and Registration Statutes as they are designed as punishment, until further ordered by this Court.

F.    Such additional relief and remedies as the Court may deem just and appropriate.

G.    If relief is not Granted, Plaintiffs and potential Class Members will continue to suffer past, present and future irreparable harm by Defendants, by the implementation of conditional release and the registration statute (by statute is automatically 10 years for the first offense, lifetime for a second offense), whether it be five (5) years, ten (10) years or lifetime without due process which violates Plaintiffs and potential Class Members Constitutional rights under the Fourth Amendment (Illegal Search and Seizure), Eighth Amendment (Cruel and Unusual Punishment) and Fourteenth Amendment (due process, procedural due process and substantive due process) rights.

I (We) hereby certify under the penalty of perjury that the above petition is true to the best of my (our) information, knowledge and belief.

**FURTHER YOUR AFFIANTS SAYETH NOT.**

KAIREEN MAE LEPPANEN
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2019

**SWORN AND SUBSCRIBED TO ME ON THIS 5th DAY OF November 2018**

_____
**NOTARY**

**RESPECTFULLY SUBMITTED**

_____
Austin Black Elk, Pro Se
1111 Highway 73
Moose Lake, Minnesota 55767-9452

**SWORN AND SUBSCRIBED TO ME ON THIS 5th DAY OF November 2018**

_____
**NOTARY**

**RESPECTFULLY SUBMITTED**

_____
Michael Dewayne Perseke, Pro Se
1111 Highway 73
Moose Lake, Minnesota 55767-9452

KAIREEN MAE LEPPANEN
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2019

**KAIREEN MAE LEPPANEN**
**NOTARY PUBLIC**
**MINNESOTA**
My Commission Expires Jan. 31, 2019

**SWORN AND SUBSCRIBED TO ME ON**          **RESPECTFULLY SUBMITTED**
**THIS 5th DAY OF November 2018**

**NOTARY**                                 Michael Whipple, Pro Se
                                           1111 Highway 73
                                           Moose Lake, Minnesota 55767-9452

**SWORN AND SUBSCRIBED TO ME ON**          **RESPECTFULLY SUBMITTED**
**THIS 5th DAY OF November 2018**

**KAIREEN MAE LEPPANEN**
**NOTARY PUBLIC**
**MINNESOTA**
My Commission Expires Jan. 31, 2019

**NOTARY**                                 Shannon D. Hollie, Pro Se
                                           1111 Highway 73
                                           Moose Lake, Minnesota 55767-9452

**SWORN AND SUBSCRIBED TO ME ON**          **RESPECTFULLY SUBMITTED**
**THIS 5th DAY OF November 2018**

**KAIREEN MAE LEPPANEN**
**NOTARY PUBLIC**
**MINNESOTA**
My Commission Expires Jan. 31, 2019

**NOTARY**                                 Mark Dunker, Pro Se
                                           1111 Highway 73
                                           Moose Lake, Minnesota 55767-9452

**SWORN AND SUBSCRIBED TO ME ON**          **RESPECTFULLY SUBMITTED**
**THIS 5th DAY OF November 2018**

**KAIREEN MAE LEPPANEN**
**NOTARY PUBLIC**
**MINNESOTA**
My Commission Expires Jan. 31, 2019

**NOTARY**                                 Gary Spicer, Pro Se
                                           1111 Highway 73
                                           Moose Lake, Minnesota 55767-9452

**SWORN AND SUBSCRIBED TO ME ON**          **RESPECTFULLY SUBMITTED**
**THIS 5th DAY OF November 2018**

**KAIREEN MAE LEPPANEN**
**NOTARY PUBLIC**
**MINNESOTA**
My Commission Expires Jan. 31, 2019

**NOTARY**                                 Rodney Thundercloud, Pro Se
                                           1111 Highway 73
                                           Moose Lake, Minnesota 55767-9452

**SWORN AND SUBSCRIBED TO ME ON**          **RESPECTFULLY SUBMITTED**
**THIS 5th DAY OF November 2018**

**NOTARY**                                 Thomas Milton, Pro Se
                                           1111 Highway 73
                                           Moose Lake, Minnesota 55767-9452

**KAIREEN MAE LEPPANEN**
**NOTARY PUBLIC**
**MINNESOTA**
My Commission Expires Jan. 31, 2019

**SWORN AND SUBSCRIBED TO ME ON THIS 5th DAY OF November 2018**

NOTARY

RESPECTFULLY SUBMITTED

Justin Jacobson, Pro Se
1111 Highway 73
Moose Lake, Minnesota 55767-9452

KAIREEN MAE LEPPANEN
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2019

**SWORN AND SUBSCRIBED TO ME ON THIS 5th DAY OF November 2018**

NOTARY

RESPECTFULLY SUBMITTED

August Kingbird, Pro Se
1111 Highway 73
Moose Lake, Minnesota 55767-9452

KAIREEN MAE LEPPANEN
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2019

**SWORN AND SUBSCRIBED TO ME ON THIS 5th DAY OF November 2018**

NOTARY

RESPECTFULLY SUBMITTED

Nick Olson, Pro Se
1111 Highway 73
Moose Lake, Minnesota 55767-9452

KAIREEN MAE LEPPANEN
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2019

**SWORN AND SUBSCRIBED TO ME ON THIS 5th DAY OF November 2018**

NOTARY

RESPECTFULLY SUBMITTED

Jamie Allen Andrews, Pro Se
1111 Highway 73
Moose Lake, Minnesota 55767-9452

KAIREEN MAE LEPPANEN
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2019

**SWORN AND SUBSCRIBED TO ME ON THIS 5th DAY OF November 2018**

NOTARY

RESPECTFULLY SUBMITTED

Terrance L. Holliday, Pro Se
1111 Highway 73
Moose Lake, Minnesota 55767-9452

KAIREEN MAE LEPPANEN
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2019